FILED by **KS** D.C.

Sep 9, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
# 21-80139-CR-CANNON/REINHART

Case No. _____

18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(2)(A)
18 U.S.C. § 1956(h)
18 U.S.C. § 1956(a)(1)(B)(i)
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)
18 U.S.C. § 982(a)(7)

**UNITED STATES OF AMERICA**

**vs.**

**JOHN MAMONE,**
**JOHN ANTHONY MAMONE, and**
**JOSEPH MAMONE,**

        **Defendants.**

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1.    The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare.

Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3.      Medicare was subdivided into multiple program "parts." Medicare Part A covered health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME"), such as orthotic devices and wheelchairs.

### Durable Medical Equipment

4.      Orthotic devices were a type of DME that included rigid and semi-rigid devices, such as knee braces, back braces, shoulder braces, ankle braces, and wrist braces.

5.      DME suppliers, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers." To participate in Medicare, providers were required to submit an application, CMS Form 855S, which contained a certification that stated:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to me or to the organization listed in Section 1B of this application. The Medicare laws, regulations, and program instructions are available through the fee-for-service contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions[,] including, but not limited to, the Federal Anti-Kickback Statute, 42 U.S.C. section 1320a-7b(b)[.]
>
> I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

6.     CMS Form 855S also required applicants to disclose to Medicare any individual or organization with an ownership interest, partnership interest, or managing control of a DME supplier.  This included: (i) all individuals and organizations with five percent or more of an ownership stake, either direct or indirect, in the DME supplier; (ii) all individuals or organizations with a partnership interest in the DME supplier, regardless of the partner's percentage of ownership; (iii) all organizations with "managing control" of the DME supplier; and (iv) all "managing employees."

7.     CMS Form 855S defined an organization with "managing control" of a DME supplier as "[a]ny organization that exercises operational or managerial control" over the DME supplier, or "conducts the day-to-day operations" of the DME supplier.  CMS Form 855S defined "managing employee" as "a general manager, business manager, administrator, director, or other individual who exercises operational or managerial control over, or who directly or indirectly conducts the day-to-day operations" of the DME supplier, "either under contract or through some other arrangement, whether or not the individual is a W-2 employee" of the DME supplier.

8.     CMS Form 855S also required the disclosure of "Adverse Legal Actions" against individuals or organizations with an ownership interest, partnership interest, or managing control of a DME supplier.  CMS Form 855S defined "Adverse Legal Actions" as, among other things, any federal or state felony conviction within the previous ten years, and any felony or misdemeanor conviction, under federal or state law, relating to the unlawful manufacture, distribution, prescription, or dispensing of a controlled substance.

9.     If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number."  A health care provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

10.     Enrolled Medicare providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement.   To receive Medicare funds, enrolled providers were required to abide by the Federal Anti-Kickback Statute and other laws and regulations.  Providers were given access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

11.     Medicare reimbursed DME companies and other health care providers for items and services rendered to beneficiaries.  To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare electronically, either directly or through a billing company.

12.     A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the DME provided to the beneficiary, the date the DME was provided, the cost of the DME, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

13.     A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary for the treatment of the beneficiary's illness or injury and prescribed by a licensed medical professional.

### Telemedicine

14.     Telemedicine provided a means of connecting patients to doctors by using telecommunications technology, such as the internet or telephone, to interact with a patient.

15.     Telemedicine companies provided telemedicine services, or telehealth services, to individuals by hiring doctors or other health care providers.  Telemedicine companies typically paid doctors a fee to conduct consultations with patients.   In order to generate revenue,

telemedicine companies typically either billed insurance or received payment from patients who utilized the services of the telemedicine company.

16.     Medicare Part B covered expenses for specific telehealth services if certain requirements were met.  These requirements included that (a) the beneficiary was located in a rural or health professional shortage area; (b) services were delivered via an interactive audio and video telecommunications system; and (c) the beneficiary was in a practitioner's office or a specified medical facility—not at a beneficiary's home—during the telehealth service with a remote practitioner.  In or around March 2020, in response to the COVID-19 pandemic, some of these requirements were amended temporarily to, among other things, cover telehealth services for certain office and hospital visits, even if the beneficiary was not located in a rural area or a health professional shortage area and even if the telehealth services were furnished to beneficiaries in their home.

### The Defendants and Related Entities

17.     Alpha Medical Supply, LLC ("ALPHA"), a limited liability company formed under the laws of Florida, was a medical supply company enrolled with Medicare that purportedly provided DME to individuals, including Medicare beneficiaries.  ALPHA had a principal place of business in Palm Beach County, and held an account at Wells Fargo Bank ("Wells Fargo") ending in x9651 (the "Alpha Wells Fargo Account") and an account at JP Morgan Chase Bank ("JPMC") ending in x5068 (the "Alpha JPMC Account").

18.     Horizon Medical Supply ("HORIZON"), a limited liability company formed under the laws of Florida, was a medical supply company enrolled with Medicare that purportedly provided DME to individuals, including Medicare beneficiaries.  HORIZON had a principal place of business in Palm Beach County, and held an account at Bank of America ("BOA") ending in x4079 (the "Horizon Account").

19.     Gulf Marketing Group, Inc. ("GULF MARKETING"), a corporation formed under the laws of Florida, was purportedly a marketing company with a principal place of business in Broward County.  GULF MARKETING held two accounts at BOA: (a) the first ending in x9169 ("Gulf Marketing Account 1"); and (b) the second ending in x0526 ("Gulf Marketing Account 2").

20.     Gulf Holdings, LLC ("GULF HOLDINGS") was a limited liability company formed under the laws of Florida, with its principal place of business in Broward County.  GULF HOLDINGS held two accounts at Wells Fargo: (a) the first ending in x1924 ("Gulf Holdings Account 1"); and (b) and the second ending in x3620 ("Gulf Holdings Account 2").

21.     Defendant **JOHN MAMONE**, a resident of Palm Beach County, Florida, was a beneficial owner of ALPHA, HORIZON, GULF MARKETING, and GULF HOLDINGS, and a signatory on the Alpha Wells Fargo Account and Alpha JPMC Account.  **JOHN MAMONE** was also a signatory on an account at Wells Fargo ending in x4633 (the "John Mamone Account").

22.     Defendant **JOHN ANTHONY MAMONE**, a resident of Broward County, Florida, was a beneficial owner of ALPHA and HORIZON, an officer of GULF MARKETING and GULF HOLDINGS, and a signatory on the Horizon Account, Gulf Marketing Account 1, Gulf Marketing Account 2, and Gulf Holdings Account.

23.     Defendant **JOSEPH MAMONE**, a resident of Broward County, Florida, was an owner, manager, and officer of HORIZON and a signatory on the Horizon Account.

6

24.     Company 1 was a limited liability company formed under the laws of Florida, with a principal place of business in Broward County, Florida.  Company 1 held an account at JPMC ending in x4131 (the "Company 1 Account").

25.     Company 2 was a limited liability company formed under the laws of Florida, with a principal place of business in Palm Beach County, Florida.  Company 2 held an account at Branch Banking and Trust Company ("BB&T") ending in x7724 (the "Company 2 Account").

**COUNT 1**
**Conspiracy to Commit Health Care Fraud and Wire Fraud**
**(18 U.S.C. § 1349)**

1.     The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.     From in or around January 2019, and continuing through in or around September 2020, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**JOHN MAMONE,**
**JOHN ANTHONY MAMONE, and**
**JOSEPH MAMONE,**

did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with each other, and others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a.     to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

b.    to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

3.    It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things:   (a) offering, paying, and causing the payment of kickbacks and bribes to patient recruiters in exchange for the referral of Medicare beneficiaries and doctors' orders for DME to ALPHA and HORIZON; (b) offering, paying, and causing the payment of kickbacks and bribes to telemedicine companies in exchange for ordering and arranging for the ordering of DME for Medicare beneficiaries, without regard to the medical necessity of the prescribed DME or whether the DME was eligible for Medicare reimbursement; (c) submitting and causing the submission, via interstate wire communication, of false and fraudulent claims to Medicare through ALPHA and HORIZON for DME that was not medically necessary and not eligible for Medicare reimbursement; (d) concealing and causing the concealment of false and fraudulent claims to Medicare; and (e) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

## Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things:

4.      **JOHN MAMONE, JOHN ANTHONY MAMONE, JOSEPH MAMONE**, and other co-conspirators acquired beneficial ownership interests in DME suppliers, including ALPHA and HORIZON.

5.      **JOHN MAMONE** and other co-conspirators recruited and paid individuals to serve as nominee owners of DME suppliers, including ALPHA, in order to conceal the identities of the beneficial owners of the DME suppliers.

6.      **JOHN MAMONE, JOHN ANTHONY MAMONE, JOSEPH MAMONE**, and other co-conspirators, through and on behalf of ALPHA and HORIZON, paid and caused to be paid kickbacks and bribes to patient recruiters, through Company 1 and Company 2 among others, in exchange for referring beneficiaries and doctors' orders for DME to ALPHA and HORIZON.

7.      **JOHN MAMONE, JOHN ANTHONY MAMONE, JOSEPH MAMONE**, and other co-conspirators, through and on behalf of ALPHA and HORIZON, negotiated the kickback and bribe arrangements, and disguised the true nature and source of these kickbacks and bribes as being for other purported services, such as "marketing" or "call center management" services, and further concealing such payments by entering into sham contracts.

8.      **JOHN MAMONE, JOHN ANTHONY MAMONE, JOSEPH MAMONE**, and other co-conspirators, through and on behalf of ALPHA and HORIZON, offered and paid, and caused to be paid, illegal kickbacks and bribes to telemedicine companies in exchange for doctors' orders for DME that was not medically necessary and not eligible for Medicare reimbursement. These doctors' orders were written by doctors contracted with the telemedicine companies who

did not have a pre-existing doctor-patient relationship with the beneficiaries, were not treating the beneficiaries, did not conduct a physical examination, and did not conduct a proper telemedicine visit.

9.      **JOHN MAMONE, JOHN ANTHONY MAMONE, JOSEPH MAMONE**, and other co-conspirators submitted, and caused the submission of, false and fraudulent claims to Medicare, through the use of interstate wire communications, on behalf of ALPHA and HORIZON, totaling approximately $7,445,418, for DME that was not medically necessary and not eligible for reimbursement.   As a result of these false and fraudulent claims, ALPHA and HORIZON received payment in the approximate amount of $3,805,073.

10.     **JOHN MAMONE, JOHN ANTHONY MAMONE, JOSEPH MAMONE**, and other co-conspirators used the fraud proceeds to benefit themselves and others, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

<u>**COUNTS 2–5**</u>
**Health Care Fraud**
**(18 U.S.C. § 1347)**

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around January 2019, and continuing through in or around September 2020, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**JOHN MAMONE,**
**JOSEPH MAMONE, and**
**JOHN ANTHONY MAMONE,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health

care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said healthcare benefit program.

**Purpose of the Scheme and Artifice**

3.      It was a purpose of the scheme and artifice for the defendants and their accomplices to unlawfully enrich themselves by, among other things:  (a) offering, paying, and causing the payment of kickbacks and bribes in exchange for the referral of Medicare beneficiaries and doctors' orders for DME to ALPHA and HORIZON; (b) paying and causing the payment of kickbacks and bribes to telemedicine companies in exchange for ordering and arranging for the ordering of DME for Medicare beneficiaries, without regard to the medical necessity of the prescribed DME or whether the DME was eligible for Medicare reimbursement; (c) submitting and causing the submission of false and fraudulent claims to Medicare through ALPHA and HORIZON for DME that was not medically necessary and not eligible for Medicare reimbursement; (d) concealing and causing the concealment of false and fraudulent claims to Medicare; and (e) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

**The Scheme and Artifice**

4.      The Manner and Means section of Count 1 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

**Acts in Execution or Attempted Execution**
**of the Scheme and Artifice**

5.      On or about the dates set forth as to each count below, in Palm Beach County, in

the Southern District of Florida, and elsewhere, the defendants did knowingly and willfully

execute, and attempt to execute, the above-described scheme and artifice to defraud a health care

benefit program, in that the defendants submitted and caused the submission of false and fraudulent

claims, seeking the identified dollar amounts, and representing that such benefits, items, and

services were medically necessary and eligible for Medicare reimbursement:

| Count | Beneficiary | Billing Entity | Approx. Date of Service | First Orthosis in Claim; Claim No. | Total Approx. Amount Billed |
|-------|-------------|----------------|-------------------------|-------------------------------------|-----------------------------|
| 2 | D.L. | HORIZON | 10/1/2019 | Knee orthosis; 119276783797001 | $4,820 |
| 3 | S.R. | ALPHA | 4/16/2020 | Ankle foot orthosis; 120107737047000 | $1,000 |
| 4 | B.T. | ALPHA | 5/11/2020 | Ankle foot orthosis; 120140800637001; | $4,100 |
| 5 | L.J. | HORIZON | 5/26/2020 | Lumbar-sacral orthosis; 120150800728000 | $4,870 |

In violation of Title 18, United States Code, Sections 1347 and 2.

**COUNT 6**
**Conspiracy to Defraud the United States and to Pay Health Care Kickbacks**
**(18 U.S.C. § 371)**

1.      The General Allegations section of this Indictment is re-alleged and incorporated

by reference as though fully set forth herein.

2.      From in or around January 2019, and continuing through in or around September

2020, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**JOHN MAMONE,**
**JOHN ANTHONY MAMONE, and**
**JOSEPH MAMONE,**

did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with each other, and with others known and unknown to the Grand Jury, to defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of HHS and CMS in their administration and oversight of Medicare; and to commit an offense against the United States, that is, to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of an item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

## Purpose of the Conspiracy

3.       It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things:  (a) falsifying and causing the falsification of Medicare enrollment forms to conceal the true ownership of, and managing control over, ALPHA and HORIZON; (b) offering, paying, and causing the payment of kickbacks and bribes in exchange for the referral of Medicare beneficiaries and doctors' orders for DME to ALPHA and HORIZON; (c) offering, paying, and causing the payment of kickbacks and bribes to telemedicine companies in exchange for ordering and arranging for the ordering of DME for Medicare beneficiaries; (d) submitting and causing the submission of claims to Medicare through ALPHA and HORIZON for DME that was obtained through the payment of kickbacks and bribes for the referral of Medicare beneficiaries and doctors' orders; (e) concealing and causing the concealment

13

of claims to Medicare that were obtained through the payment of kickbacks and bribes for the referral of beneficiaries and doctors' orders for DME; and (f) diverting proceeds from the claims for their personal use and benefit, the use and benefit of others, and to further the kickback conspiracy.

**Manner and Means of the Conspiracy**

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

4.      **JOHN MAMONE, JOHN ANTHONY MAMONE**, and **JOSEPH MAMONE** acquired beneficial ownership interests in ALPHA and HORIZON.

5.      **JOSEPH MAMONE** falsified and caused the falsification of Medicare enrollment forms, bank records, corporate records, and other documents in order to conceal the identities of the true owner and manager of HORIZON, including **JOHN MAMONE** and **JOHN ANTHONY MAMONE**.

6.      **JOHN MAMONE, JOHN ANTHONY MAMONE**, and **JOSEPH MAMONE** recruited individuals to serve as the nominee owners of ALPHA in order to conceal their beneficial ownership interest and control of ALPHA.

7.      **JOHN MAMONE, JOHN ANTHONY MAMONE, JOSEPH MAMONE**, and other co-conspirators, through and on behalf of ALPHA and HORIZON, paid and caused to be paid kickbacks and bribes to patient recruiters, through Company 1 and Company 2 among others, in exchange for referring Medicare beneficiaries and doctors' orders for braces to ALPHA and HORIZON.

8.      **JOHN MAMONE, JOHN ANTHONY MAMONE, JOSEPH MAMONE**, and other co-conspirators, on behalf of ALPHA and HORIZON, negotiated the kickback and bribe

14

arrangements, and disguised the nature and source of these kickbacks and bribes as being for other services, such as "marketing" services, and further concealing such payments by entering into sham contracts.

9.      **JOHN MAMONE, JOHN ANTHONY MAMONE, JOSEPH MAMONE,** and other co-conspirators submitted, and caused the submission of, claims to Medicare for DME on behalf of ALPHA, totaling approximately $2,951,078.  As a result of these claims, ALPHA received payment in the approximate amount of $1,575,975.

10.      **JOHN MAMONE, JOHN ANTHONY MAMONE, JOSEPH MAMONE,** and other co-conspirators submitted, and caused the submission of,  claims to Medicare for DME on behalf of HORIZON, totaling approximately $4,494,340.   As a result of the claims, HORIZON received payment in the approximate amount of $2,289,098.

11.      **JOHN MAMONE, JOHN ANTHONY MAMONE, JOSEPH MAMONE,** and other co-conspirators used the proceeds received from Medicare to benefit themselves and others, and to further the conspiracy.

### **Overt Acts**

In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one co-conspirator committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

1.      On or about July 24, 2019, **JOSEPH MAMONE** authorized an individual to execute a CMS Form 855S, falsely certifying that, as of June 17, 2019, **JOSEPH MAMONE** was the sole owner and person with managing control of HORIZON, when in fact **JOHN MAMONE** and **JOHN ANTHONY MAMONE** were also beneficial owners and participated in managing HORIZON.

2.      On or about October 14, 2019, **JOHN MAMONE, JOHN ANTHONY MAMONE,** and **JOSEPH MAMONE** authorized an individual to execute a CMS Form 855S, falsely certifying that, as of September 18, 2019, that individual was the sole owner and person with managing control of ALPHA, when in fact **JOHN MAMONE, JOHN ANTHONY MAMONE,** and **JOSEPH MAMONE** were also beneficial owners and participated in managing ALPHA.

3.      On or about November 5, 2019, **JOHN MAMONE, JOHN ANTHONY MAMONE**, and **JOSEPH MAMONE** caused ALPHA to execute a Business Processing and Outsourcing Agreement between ALPHA and Company 1, which falsely represented that Company 1 would provide "business, processing and outsourcing" services, among other services, to ALPHA.

4.      On or about November 5, 2019, **JOSEPH MAMONE** executed a Business Processing and Outsourcing Agreement between HORIZON and Company 1, which falsely represented that Company 1 would provide "business, processing and outsourcing" services, among other services, to HORIZON.

5.      On or about November 8, 2019, **JOHN MAMONE** transferred and caused to be transferred approximately $15,000, via wire transfer, from the Alpha Wells Fargo Account to the Company 1 Account.

6.      On or about November 15, 2019, **JOSEPH MAMONE** and **JOHN ANTHONY MAMONE** transferred and caused to be transferred approximately $30,000, via wire transfer, from the Horizon Account to the Company 1 Account.

7.      On or about January 3, 2020, **JOHN MAMONE, JOHN ANTHONY MAMONE,** and **JOSEPH MAMONE** caused ALPHA to execute a Management Services Agreement between

ALPHA and Company 2, which falsely represented that Company 2 would provide "marketing and brand awareness" and "logistical management" services, among other services, to ALPHA. This agreement also falsely represented that the compensation "shall not in any way be related to the value, volume, or adjudication of referrals between the parties."

8.      On or about January 3, 2020, **JOSEPH MAMONE** executed a Management Services Agreement between HORIZON and Company 2, which falsely represented that Company 2 would provide "marketing and brand awareness" and "logistical management" services, among other services, to HORIZON.  This agreement also falsely represented that the compensation "shall not in any way be related to the value, volume, or adjudication of referrals between the parties."

9.      On or about January 3, 2020, **JOSEPH MAMONE** and **JOHN ANTHONY MAMONE** transferred and caused to be transferred approximately $15,000, via wire transfer, from the Horizon Account to the Company 2 Account.

10.     On or about February 14, 2020, **JOHN MAMONE** transferred and caused to be transferred approximately $15,000, via wire transfer, from the Alpha Wells Fargo Account to the Company 2 Account.

11.     On or about March 19, 2020, **JOHN MAMONE, JOHN ANTHONY MAMONE,** and **JOSEPH MAMONE** authorized an individual to execute a CMS Form 855S, falsely certifying that, as of February 10, 2020, that individual was the sole owner and person with managing control of ALPHA, when in fact **JOHN MAMONE, JOHN ANTHONY MAMONE,** and **JOSEPH MAMONE** were also beneficial owners and participated in managing ALPHA.

12.     On or about April 23, 2020, **JOSEPH MAMONE** transferred approximately $150,000, via wire transfer, from the Horizon Account to the Gulf Marketing Account 2.

13.     On or about May 29, 2020, **JOHN MAMONE** transferred approximately $160,000, via wire transfer, from the Alpha Wells Fargo Account to the Gulf Marketing Account 2.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 7-10
### Payment of Kickbacks in Connection with a Federal Health Care Program
### (42 U.S.C. § 1320a-7b(b)(2)(A))

1.     The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.     On or about the dates enumerated below, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**JOHN MAMONE,**
**JOHN ANTHONY MAMONE, and**
**JOSEPH MAMONE,**

did knowingly and willfully offer and pay remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, as set forth below, to a person, to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of an item and service for which payment may be made in whole and in part under a Federal health care program, that is, Medicare:

| Count | Approx. Date of Kickback Payment | Approx. Amt. of Kickback Payment | Description of Kickback Payment |
|-------|------------------|------------------|----------------------------------|
| 7 | 11/8/2019 | $15,000 | Wire transfer from the Alpha Wells Fargo Account to the Company 1 Account. |
| 8 | 11/15/2019 | $30,000 | Wire transfer from the Horizon Account to the Company 1 Account. |
| 9 | 1/3/2020 | $15,000 | Wire transfer from the Horizon Account to the Company 2 Account. |

| Count | Approx. Date of Kickback Payment | Approx. Amt. of Kickback Payment | Description of Kickback Payment |
|-------|----------------------------------|----------------------------------|--------------------------------|
| 10 | 2/14/2020 | $15,000 | Wire transfer from the Alpha Wells Fargo Account to the Company 2 Account. |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18, United States Code, Section 2.

**COUNT 11**
**Conspiracy to Commit Money Laundering**
**(18 U.S.C. § 1956(h))**

1.     The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.     From in or around January 2019, and continuing through in or around September 2020, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**JOHN MAMONE,**
**JOHN ANTHONY MAMONE, and**
**JOSEPH MAMONE,**

did knowingly and voluntarily combine, conspire, and agree with each other, and with others known and unknown to the Grand Jury, to conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

It is further alleged that the specified unlawful activity is conspiracy to commit health care fraud and wire fraud, in violation of Title 18, United States Code, Section 1349; health care fraud, in violation of Title 18, United States Code, Section 1347; and payment of kickbacks in connection

with a Federal health care program, in violation of Title 42, United States Code, 1320a-7b(b)(2)(A).

All in violation of Title 18, United States Code, Section 1956(h).

### COUNTS 12–15
### Money Laundering
### (18 U.S.C. § 1956(a)(1)(B)(i))

1. The General Allegations section of this Indictment is realleged and incorporated by reference as if fully set forth herein.

2. On or about the dates set forth as to each count below, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

**JOHN MAMONE,**
**JOHN ANTHONY MAMONE, and**
**JOSEPH MAMONE,**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which financial transaction involved the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, as set forth below:

| Count | Defendant(s) | Approx. Date of Transaction | Description of Financial Transaction |
|---|---|---|---|
| 12 | JOSEPH MAMONE, JOHN ANTHONY MAMONE | 4/23/2020 | Wire transfer of $150,000 from the Horizon Account to the Gulf Marketing Account 2 |
| 13 | JOHN MAMONE, JOHN ANTHONY MAMONE | 5/29/2020 | Wire transfer of $160,000 from the Alpha Wells Fargo Account to the Gulf Marketing Account 2 |

| Count | Defendant(s) | Approx. Date of Transaction | Description of Financial Transaction |
|---|---|---|---|
| 14 | JOHN MAMONE, JOHN ANTHONY MAMONE | 5/29/2020 | Wire transfer of $107,000 from the Gulf Marketing Account 2 to the Gulf Holdings Account 1 |
| 15 | JOHN MAMONE, JOHN ANTHONY MAMONE | 5/29/2020 | Wire transfer of $107,000 from Gulf Holdings Account 1 to Gulf Holdings Account 2 |

It is further alleged that the specified unlawful activity is conspiracy to commit health care fraud and wire fraud, in violation of Title 18, United States Code, Section 1349; health care fraud, in violation of Title 18, United States Code, Section 1347; and payment of kickbacks in connection with a Federal health care program, in violation of Title 42, United States Code, 1320a-7b(b)(2)(A).

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## FORFEITURE ALLEGATIONS

1.      The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendant so convicted has an interest.

2.      Upon conviction of a conspiracy to commit a violation of Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.      Upon conviction of a violation, or conspiracy to commit a violation, of Title 18, United States Code, Section 1347, or Title 42, United States Code, Section 1320a-7b, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States any property, real

or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses, pursuant to Title 18, United States Code, Section 982(a)(7).

4.    Upon conviction of a violation of Title 18, United States Code, Section 1956, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

5.    The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to, a sum of at least $3,805,073, which represents the total amount of funds involved in or derived from the alleged offenses and may be sought as a forfeiture money judgment.

6.    If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

     a.   cannot be located upon the exercise of due diligence;

     b.   has been transferred or sold to, or deposited with, a third party;

     c.   has been placed beyond the jurisdiction of the court;

     d.   has been substantially diminished in value; or

     e.   has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Sections 982(a)(1) and (a)(7) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____
GRAND JURY FOREPERSON

_____
JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

JOSEPH S. BEEMSTERBOER, ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

ALLAN MEDINA, DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

_____
PATRICK J. QUEENAN
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

JOHN MAMONE, et al.,

_____ Defendants/

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY\***
**Superseding Case Information:**

**Court Division:** (Select One)

☐ Miami  ☐ Key West  ☐ FTL
☑ WPB  ☐ FTP

New defendant(s) ☐ Yes ☐ No
Number of new defendants _____
Total number of counts _____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act,

   Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No) **No** _____

   List language and/or dialect _____

4. This case will take __5__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   | | (Check only one) | | (Check only one) | |
   |---|---|---|---|---|
   | I | 0 to 5 days | ☑ | Petty | ☐ |
   | II | 6 to 10 days | ☐ | Minor | ☐ |
   | III | 11 to 20 days | ☐ | Misdemeanor | ☐ |
   | IV | 21 to 60 days | ☐ | Felony | ☑ |
   | V | 61 days and over | ☐ | | |

6. Has this case previously been filed in this District Court? (Yes or No) **No**

   If yes: Judge _____ Case No. _____

   (Attach copy of dispositive order)

   Has a complaint been filed in this matter? (Yes or No) **No** _____

   If yes: Magistrate Case No. _____

   Related miscellaneous numbers: _____

   Defendant(s) in federal custody as of _____

   Defendant(s) in state custody as of _____

   Rule 20 from the District of _____

   Is this a potential death penalty case? (Yes or No) **No** _____

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)? (Yes or No) **No** _____

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) **No** _____

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? (Yes or No) **No** _____

_____
PATRICK J. QUEENAN
DOJ Trial Attorney
Court ID No.     A5502715

\*Penalty Sheet(s) attached

REV 3/19/21

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**          **JOHN MAMONE**

**Case No:** _____

Count #:   1

   Title 18, United States Code, Section 1349

   Conspiracy to Commit Health Care Fraud and Wire Fraud

**\*Max Penalty:**   Ten (10) years' imprisonment

Counts #:   2 – 5

   Title 18, United States Code, Section 1347

   Health Care Fraud

**\*Max Penalty:**   Ten (10) years' imprisonment as to each count

Count #:   6

   Title 18, United States Code, Section 371

   Conspiracy to Defraud the United States and to Pay Health Care Kickbacks

\*Max Penalty:   Five (5) years' imprisonment

Counts #:   7 – 10

   Title 42, United States Code, Section 1320a-7b(b)(2)(A)

   Payment of Kickbacks in Connection with a Federal Health Care Program

\*Max Penalty:   Ten (10) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**      **JOHN MAMONE**

**Case No:**

Count #:   11

  Title 18, United States Code, Section 1956(h)

  Conspiracy to Commit Money Laundering

**\*Max Penalty:**   Twenty (20) years' imprisonment

Counts #:   13 – 15

  Title 18, United States Code, Section 1956(a)(1)(B)(i)

  Money Laundering

**\*Max Penalty:**    Twenty (20) years imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**PENALTY SHEET**

**Defendant's Name:** _____ **JOHN ANTHONY MAMONE** _____

**Case No:** _____

Count #: 1

  Title 18, United States Code, Section 1349

  Conspiracy to Commit Health Care Fraud and Wire Fraud

**\*Max Penalty:** Ten (10) years' imprisonment

Counts #: 2 – 5

  Title 18, United States Code, Section 1347

  Health Care Fraud

**\*Max Penalty:** Ten (10) years' imprisonment as to each count

Count #: 6

  Title 18, United States Code, Section 371

  Conspiracy to Defraud the United States and to Pay Health Care Kickbacks

\*Max Penalty: Ten (10) years' imprisonment

Counts #: 7 – 10

  Title 42, United States Code, Section 1320a-7b(b)(2)(A)

  Payment of Kickbacks in Connection with a Federal Health Care Program

\*Max Penalty: Ten (10) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**      **JOHN ANTHONY MAMONE**

**Case No:** _____

Count #:    11

   Title 18, United States Code, Section 1956(h)

   Conspiracy to Commit Money Laundering

**\*Max Penalty**:    Twenty (20) years' imprisonment

Counts #:    12 – 15

   Title 18, United States Code, Section 1956(a)(1)(B)(i)

   Money Laundering

**\*Max Penalty**:     Twenty (20) years imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**      **JOSEPH MAMONE**

**Case No:** _____

Count #:   1

   Title 18, United States Code, Section 1349

   Conspiracy to Commit Health Care Fraud and Wire Fraud

**\*Max Penalty**:    Ten (10) years' imprisonment

Counts #:   2 – 5

   Title 18, United States Code, Section 1347

   Health Care Fraud

**\*Max Penalty**:     Ten (10) years' imprisonment as to each count

Count #:   6

   Title 18, United States Code, Section 371

   Conspiracy to Defraud the United States and to Pay Health Care Kickbacks

\*Max Penalty:     Five (5) years' imprisonment

Counts #:   7 – 10

   Title 42, United States Code, Section 1320a-7b(b)(2)(A)

   Payment of Kickbacks in Connection with a Federal Health Care Program

\*Max Penalty:      Ten (10) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>**PENALTY SHEET**</u>

Defendant's Name:        **JOSEPH MAMONE**

Case No: _____

Count #:   11

   Title 18, United States Code, Section 1956(h)

   Conspiracy to Commit Money Laundering

*__Max Penalty__:   Ten (10) years' imprisonment

Count #:   12

   Title 18, United States Code, Section 1956(a)(1)(B)(i)

   Money Laundering

*__Max Penalty__:   Twenty (20) years imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**